IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SANDSTONE POINT CONDOMINUMS
ASSOCIATION, INC.,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION and ORDER |
| v. | | |
| | | 25-cv-448-jdp |
| ERIE INSURANCE COMPANY, | | |
| | Defendant. | |

---

This is an insurance dispute about hail damage. Plaintiff Sandstone Point Condominiums asserts claims against its insurer, defendant Erie Insurance Company, for breach of contract and bad faith. The merits of the dispute are not before the court. Rather, Erie moves for partial summary judgment on the ground that Sandstone's breach-of-contract claim is untimely. Erie does not seek summary judgment on the bad faith claim.

It is undisputed that Sandstone filed this lawsuit after the contract's two-year deadline. But Sandstone contends that Erie should be estopped from asserting the deadline or the deadline should be tolled because "Erie continued to investigate, evaluate, and adjust Sandstone's claim through and beyond that deadline." Dkt. 35, at 8. No reasonable jury could find that Sandstone has satisfied the standard for estoppel or tolling, so the court will grant Erie's motion for partial summary judgment.

UNDISPUTED FACTS

The following facts are undisputed.[1]

On March 2, 2023, there was a hailstorm in Madison, Wisconsin, where plaintiff owns two condominium buildings. Sandstone submitted a claim to Erie for property damage. Erie inspected the property and approved replacement of 45 static box/aluminum roof vents at a replacement cost value of $3,369. In April 2023, Erie mailed a check to Sandstone.[2]

More than a year later, in July 2024, Sandstone hired Miller Public Adjusting to conduct a new inspection of the property. In September 2024, Miller concluded that the replacement cost value for damage to the property from the hailstorm was approximately $120,000. Miller submitted its findings to Erie and requested reinspection. Erie denied this request, standing by its previous determination.

In October 2024, Miller sent another email to Erie, raising several questions about its determination. One day later, Erie hired Young & Associates Engineering to inspect Sandstone's property. (The parties do not explain why.) After that inspection, in a letter dated February 27, 2025, Erie updated its calculation of replacement cost value to $15,181.39 and issued a check to Sandstone for the actual cash value. (The parties do not explain why Erie changed its calculation, and they do not say what the amount of the check was.) The letter also

---

[1] Erie submitted what it called "supplemental" proposed findings of fact with its reply brief. Dkt. 41. The court has disregarded the supplemental facts because the court's summary judgment procedures do not allow moving parties to submit a second set of proposed findings of fact and because Sandstone did not have an opportunity to respond to Erie's supplemental facts.

[2] Sandstone did not receive the check right away because the address Erie had on file for Sandstone was not current. Dkt. 40, ¶¶ 11–12. Sandstone does not say when it received the check, but it does not allege that Erie failed to resend it.

reminded Sandstone of a policy provision that requires insureds to bring a lawsuit within two years of the loss.

In March 2025, Miller challenged Young's conclusions in multiple emails, requesting "further investigation." Dkt. 37-11, at 1. The parties do not say in their proposed findings of fact whether or how Erie responded to that request.

On May 5, 2025, Erie sent a letter to Sandstone that included the following statements:

> As you're aware, we made an Actual Cash Value payment to you on March 3, 2025. Your claim file remained open to consider payment of the replacement cost holdback. . . . In order for us to consider releasing the replacement cost holdback, we'll need the documentation supporting the actual cost incurred to complete the repairs. . . . Once received, we will review the information submitted to consider issuing payment of the replacement cost holdback, up to the actual cost earned.
>
> . . . I will be closing your file at this time; however, if the repairs are completed and the documentation to support those repairs is received I will reopen the file,
>
> Please be advised that nothing in this letter is intended to waive any of the terms, conditions or defenses under the policy.

Sandstone filed this lawsuit on May 6, 2025.

Sandstone is incorporated in Wisconsin, and its principal place of business is in Wisconsin. Dkt. 43. Erie is incorporated in Pennsylvania, and its principal place of business is in Pennsylvania. *Id.* It is reasonable to infer from Sandstone's allegations that more than $75,000 is in controversy. So the court may exercise jurisdiction under 28 U.S.C. § 1332.

## ANALYSIS

Erie moves for partial summary judgment on Sandstone's breach-of-contract claim, contending that Sandstone failed to comply with the following provision in the relevant policy:

"We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within 2 years . . . after the 'loss' occurs." The parties agree that the alleged loss occurred on March 2, 2023 (the day of the hailstorm), so the deadline passed on March 2, 2025, more than two months before Sandstone filed this case. Sandstone contends that Erie should be estopped from relying on that deadline or the court should toll the deadline.

On a motion for summary judgment, the question is whether there are any genuine disputes of material fact. Fed. R. Civ. P. 56(a). A factual dispute is genuine if it is based on admissible evidence that actually contradicts opposing evidence. *See Carroll v. Lynch*, 698 F.3d 561, 565 (7th Cir. 2012). A genuine factual dispute is material if it could make a difference to the outcome of the case, or, in other words, a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

Sandstone does not separate its arguments regarding estoppel and tolling. But they are not the same thing, so the court will consider whether Sandstone has raised a genuine dispute on either issue.

## A. Estoppel

In the context of untimely insurance claims, Wisconsin courts have articulated the standard for estoppel in different ways.[3] But all of the cases require the plaintiff to show at least one of two things: (1) the insurer induced the insured to delay bringing suit until after the deadline; or (2) the insurer engaged in some type of misconduct that would make it inequitable to enforce the deadline. Wisconsin courts have also held that any claim for equitable estoppel requires reasonable reliance. *See Hester v. Williams*, 117 Wis. 2d 634, 645,

---

[3] *See Elliott v. Gen. Cas. Co. of Wisconsin*, 2011 WI App 155, ¶ 13, 337 Wis. 2d 737, 807 N.W.2d 33 (nonprecedential) (applying five-element test from *State ex rel. Susedik v. Knutson*, 52 Wis. 2d 593, 596–97, 191 N.W.2d 23 (1971), that requires inequitable conduct and reasonable reliance, among other things); *Wieting Funeral Home of Chilton, Inc. v. Meridian Mut. Ins. Co.*, 2004 WI App 218, ¶ 23, 277 Wis. 2d 274, 288–89, 690 N.W.2d 442, 449 ("The test of whether a party should be estopped from asserting the statute of limitations is whether the conduct and representations of the party against whom estoppel is sought were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions."); *Johnson v. Johnson*, 179 Wis. 2d 574, 582, 508 N.W.2d 19, 21–22 (Ct. App. 1993) ("[T]he elements necessary to apply equitable estoppel include fraud or inequitable conduct by the party asserting the statute of limitations and that the aggrieved party failed to commence an action within the statutory period because of reliance on the wrongful conduct."); *Heezen v. Hartland Cicero Mut. Ins. Co.*, 63 Wis. 2d 449, 453, 217 N.W.2d 272, 274–75 (1974) ("[T]he insurer may be estopped [from asserting a statute of limitations defense] when he wrongfully or unjustifiably withholds the policy of insurance from the insured."); *Dishno v. Home Mut. Ins. Co.*, 256 Wis. 448, 452–53, 41 N.W.2d 375, 377 (1950)("[I]f, by any act or omission of the responsible officers and agents of the defendant, the plaintiff should be induced to suspend action in the premises, for a given time, such time should not be deemed a part of the twelve months to which his right of action is limited by the original contract."); *Fischer v. Harmony Town Ins. Co.*, 249 Wis. 438, 443, 24 N.W.2d 887, 889 (1946) ("[I]f the insurance company, by its acts, induces the insured to suspend his proceedings, and delay action on the policy, the time elapsing during such delay so caused should not be reckoned as a part of the time limited for the bringing of the action.").

345 N.W.2d 426, 431 (1984); *Kornreich v. Town of Cedarburg*, 2023 WI App 46, ¶ 9, 409 Wis. 2d 118, 124, 996 N.W.2d 72, 75; *Wosinski v. Advance Cast Stone Co.*, 2017 WI App 51, ¶ 40, 377 Wis. 2d 596, 631–32, 901 N.W.2d 797, 815. The burden is on Sandstone to show that equitable estoppel should apply. *Wieting Funeral Home of Chilton, Inc. v. Meridian Mut. Ins. Co.*, 2004 WI App 218, ¶ 23, 277 Wis. 2d 274, 288–89, 690 N.W.2d 442, 449; *Johnson v. Johnson*, 179 Wis. 2d 574, 583, 508 N.W.2d 19, 22 (Ct. App. 1993).

In this case, Sandstone's position is that estoppel should apply because Erie "continued to investigate, evaluate, and adjust Sandstone's claim through and beyond the contractual limitations deadline," and that Erie's "conduct would lead a reasonable insured to believe that the claim remained in the adjustment process and that litigation was neither necessary nor appropriate." Dkt. 35 at 6.

An initial problem with Sandstone's position is that Sandstone does not cite evidence that it *did* rely on anything Erie did or said when choosing to wait until after the deadline to file this lawsuit. As already discussed, reliance is an element of an estoppel claim. So that failure alone is fatal to Sandstone's estoppel argument. *See Schwetz v. Emps. Ins. of Wausau*, 126 Wis. 2d 32, 38–39, 374 N.W.2d 241, 244 (Ct. App. 1985), *overruled on other grounds by Colby v. Columbia Cnty.*, 202 Wis. 2d 342, 550 N.W.2d 124 (1996). But even if Sandstone relied on Erie's conduct or statements, no reasonable jury could find that Sandstone's reliance was reasonable or that Erie engaged in inequitable conduct.

Sandstone did not cite any cases in which Wisconsin courts considered whether and, if so, when an insurer's ongoing investigation provides grounds for estoppel. But Erie cited several cases and the court uncovered others in its own research, which are cited in footnote three.

6

Erie's best case is *Johnson*, 508 N.W.2d 19, and Erie cites *Johnson* numerous times in its brief. In that case, the court of appeals affirmed summary judgment for the insurer on the ground that the claim was untimely and rejected the insured's estoppel argument. The insured relied on the following facts to try to prove estoppel: (1) when the insured expressed concern about running out of time to make a claim, the insurer told him that  he had "plenty of time to make a claim"; (2) just before the deadline for filing a claim, the insurer asked the insured for authorization to review his medical records; (3) after the statute of limitations had run, the insurer requested additional information from the insured and promised to contact him after completing its investigation. The court of appeals concluded that cited evidence did not "indicate that [the parties'] discussions were anything but good faith negotiations toward an amicable settlement," and that "[t]here is no evidence that would indicate that [the insurer] strung [the insured] along and then hastily terminated negotiations at the zero hour, leaving him insufficient time to commence an action." *Id.* at 23.

Sandstone's best case is *Dishno*, in which the supreme court affirmed the lower court's denial of summary judgment, rejecting the insurer's argument that the claim should be dismissed as untimely. The supreme court relied on the following facts: (1) the insurer "invited and encouraged" the insured to continue negotiations throughout the limitations period; and (2) the insurer never denied the claim during the limitations period but instead "negotiat[ed] on solely the issue as to the amount of the loss sustained." 41 N.W.2d 375, 376–77.[4]

---

[4] *Dishno* frames the issue as one of "waiver" rather than estoppel, but later decisions have included *Dishno* in their discussions of estoppel precedent. *See, e.g., Elliott*, 2011 WI App 155, at ¶ 15; *see also Berry v. State Farm Fire & Cas. Co.*, 388 F. Supp. 3d 1063, 1067–70 (E.D. Wis. 2019).

There is some tension between *Johnson* and *Dishno*. *Johnson* states that the insured must show "fraudulent or inequitable conduct" and that "[t]here is nothing fraudulent or inequitable about engaging in settlement discussions to avoid litigation." *Johnson*, 508 N.W.2d at 23; *see also Wieting Funeral Home*, 2004 WI App 218, at ¶¶ 26-27 (rejecting estoppel argument because "nothing in [the insured's] conduct indicat[es] a lack of good faith, fraud, or inequitable behavior"). *Dishno* states that the deadline may not be enforced "if the plaintiff should be induced to suspend action" by "any act or omission of the responsible officers and agents of the defendant," and the court concluded that the ongoing settlement talks met that standard. 41 N.W.2d 375, 376–77; *see also Fischer*, 24 N.W.2d at 889 (deadline may not be enforced "if the insurance company, by its acts, induces the insured to suspend his proceedings, and delay action on the policy").

So *Johnson* and *Wieting* seem to suggest that a showing a bad faith is required while *Dishno* and *Fischer* say nothing about bad faith and focus instead on inducement. *Dishno* and *Fischer* (decided by the supreme court) predate by several decades both *Johnson* and *Wieting* (decided by the court of appeals), but neither *Johnson* nor *Wieting* acknowledge *Dishno* or *Fischer*.

This court need not decide whether these cases can be harmonized or whether good faith settlement negotiations could ever provide grounds for estoppel because Sandstone's estoppel argument fails even under *Dishno* and *Fischer*. Erie did not "invite[]" or "encourage[]" Sandstone to continue negotiating as in *Dishno* and *Fischer*. Rather, Erie promptly decided Sandstone's claim within a few weeks and mailed Sandstone a check. Nothing happened for 14 months until Sandstone, not Erie, hired a different adjuster. Even after the adjuster submitted a report favoring Sandstone, Erie declined to change its opinion or open

negotiations. It would serve no principle of equity to allow an insured to avoid a deadline by unilaterally seeking reconsideration long after the decision was made.

It is true that Erie conducted a new inspection of Sandstone's property in October 2024. But Sandstone points to no statement by Erie suggesting that it had changed its mind, that it wanted to begin settlement talks with Sandstone, or that Sandstone should not pursue litigation. Instead, Sandstone points to Erie's February 27, 2025 letter in which Erie updated its calculation of the replacement cost value. But even then, there was no encouragement from Erie to continue discussions about Erie's determination. To the contrary, the letter states that Erie's investigation "was completed" and that a check was enclosed. Dkt. 37-12, at 1, 3. In fact, the letter warned Sandstone about the two-year deadline and informed Sandstone that it "should not construe any actions taken by Erie up to this point as a waiver of any rights to deny coverage" and that Erie was "reserv[ing] all rights available under the policy." *Id.* at 3. No reasonable insured could construe these statements and conduct as an inducement to delay filing a lawsuit.

Sandstone also relies on Erie's May 5, 2025 letter stating that Sandstone's "file remained open to consider payment of the replacement cost holdback." Dkt. 37-13. But Sandstone could not have relied on that letter because it was sent after the deadline had already expired in March. *See Johnson,* 508 N.W.2d at 22.

No reasonable jury could find that Erie induced Sandstone to delay bringing suit until after the deadline passed or that Erie engaged in some other type of misconduct that would make it inequitable to enforce the deadline.

**B. Tolling**

Wisconsin courts apply equitable tolling "when a party misses a deadline due to factors outside the party's control." *State ex rel. Davis v. Cir. Ct. for Dane Cnty.*, 2024 WI 14, ¶ 39, 411 Wis. 2d 123, 138. This principle is most frequently invoked in prisoner litigation when the prisoner is unable to comply with a deadline because of delays by prison staff in sending a submission to the court. *See State v. Zimbal*, 2017 WI 59, ¶ 66, 375 Wis. 2d 643, 671, 896 N.W.2d 327, 340; *State ex rel. Nichols v. Litscher*, 2001 WI 119, ¶ 32, 247 Wis. 2d 1013, 635 N.W.2d 292. Sandstone cites no cases in which Wisconsin courts applied this common law doctrine to an insurance dispute. Sandstone cites *Borgen v. Econ. Preferred Ins. Co.*, 176 Wis. 2d 498, 504–05, 500 N.W.2d 419, 421 (Ct. App. 1993), but that case had nothing to do with tolling; the court was interpreting the meaning of the limitations period in Wis. Stat. § 631.83. In dicta, the court stated that there was nothing "illogical" about applying a discovery rule to a notice-of-loss requirement. 500 N.W.2d at 423. But this case is not about notice-of-loss requirements, and, even if the discovery rule applied, it would not help Sandstone because Sandstone does not allege that the loss was hidden in this case.

Even if the common law doctrine of equitable tolling does apply to insurance cases, that standard is not met in this case. Sandstone has not identified any conduct by Erie that prevented Sandstone from filing a timely claim.

There is a statutory mechanism for tolling certain insurance claims when the parties conduct an "appraisal or arbitration procedure prescribed by the insurance policy or by law or agreed to by the parties." Wis. Stat. § 631.83(5). But Sandstone does not contend that there was an appraisal or arbitration procedure that met the requirements of the statute, so the statute does not apply.

Sandstone has not shown that either estoppel or tolling bars Erie from enforcing the two-year deadline in the insurance policy. The court will grant Erie's motion for partial summary judgment.

ORDER

IT IS ORDERED that defendant Erie Insurance Company's motion for partial summary judgment, Dkt. 30, is GRANTED, and plaintiff Sandstone Point Condominiums Association, Inc.'s breach-of-contract claim is DISMISSED. The case will move forward on Sandstone's bad faith claim.

Entered June 15, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge